UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GRANT'S FINANCIAL PUBLISHING INC. <br><br> Plaintiff, <br><br> v. <br><br> SUN LIFE FINANCIAL INC., SUN LIFE ASSURANCE COMPANY OF CANADA (U.S.), and MCLEAN BUDDEN LIMITED. <br><br> Defendants. | Case No. 05 CV 4791 (Unassigned) <br> ECF CASE <br><br><br> **COMPLAINT FOR** <br> **COPYRIGHT INFRINGEMENT** <br><br><br> Jury Trial Demanded |

### Nature of the Action

1.      This is a civil action for copyright infringement arising under the United States Copyright Act, 17 U.S.C. §§ 101, *et seq.*  Plaintiff Grant's Financial Publishing Inc. ("Grant's") brings this action as a result of systematic infringement of Grant's registered copyrights in its semi-monthly financial newsletter, *Grant's Interest Rate Observer*, by the Sun Life Financial Inc., Sun Life Assurance Company of Canada (U.S.), and McLean Budden Limited (collectively, the "Sun Life Companies").  Ignoring multiple copyright notices and repeated specific, written warnings, as well as basic fairness and common sense, the Sun Life companies routinely made a substantial number of unauthorized copies of *Grant's Interest Rate Observer* on a regular basis, over the course of many months, if not years.  They distributed these copies without authorization to a substantial number of financial professionals and others, causing significant harm to Grant's.  The Sun Life Companies thus are liable for an award of their resulting profits, actual damages, statutory damages, an injunction, and an award of legal fees and costs.

**The Parties**

2.      Grant's is a small, family-owned business incorporated in New York and located

at 2 Wall St., New York, NY 10005.  Grant's was founded in 1982 and currently has eight

employees.  Its primary product is *Grant's Interest Rate Observer*, a newsletter analyzing the

financial markets in a manner directed to investment professionals.  It publishes *Grant's Interest*

*Rate Observer* twice monthly, offering an annual subscription at a current price of $785.

3.      The Sun Life Companies share control, ownership, and operations in relation to

providing financial services.

(a)      Defendant Sun Life Financial Inc. ("SLF") is a financial services firm

incorporated in Ontario, Canada, with corporate headquarters at 150 King Street West, Toronto,

Ontario, Canada M5H 1J9.  SLF owns and controls the Sun Life Companies directly or

indirectly.  Through the Sun Life Companies' integrated operations, SLF does business across

North America.  SLF maintains the culture of infringement that led to this lawsuit.  On

information and belief, SLF conducts regular and extensive business in and has extensive

contacts with New York and this district.

(b)      Defendant Sun Life Assurance Company of Canada (U.S.) ("SL-US") is a wholly

owned subsidiary of SLF, incorporated in Delaware and headquartered at 1335 One Sun Life

Executive Park, Wellesley Hills, Massachusetts 02481.  SL-US has multiple offices in the United

States, including one at The Lincoln Building, Suite 1115, 60 East 42nd Street, New York, New

York 10165.  SL-US is under common ownership and control with the other Sun Life Companies

- 2 -

and through their integrated operations carries on the culture of infringement that led to this lawsuit. On information and belief, SL-US conducts regular and extensive business in and has extensive contacts with New York and this district.

      (c)     Defendant McLean Budden Limited is a majority-owned subsidiary of SLF with its corporate headquarters at 145 King Street West, Suite 2525, Toronto, Ontario, Canada M5H 1J8. It has three other offices, including one in the United States. McLean Budden is under common ownership and control with the other Sun Life Companies and through their integrated operations carries on the culture of infringement that led to this lawsuit. On information and belief, McLean Budden conducts regular and extensive business in and has extensive contacts with New York and this district.

### Jurisdiction and Venue

    4.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a). The Court also has supplemental jurisdiction under 28 U.S.C. § 1367. Defendants' repeated and regular contacts with New York, including contacts related to and giving rise to the claims asserted in this Complaint, subject them to personal jurisdiction here. Among other things, the infringed works were obtained from and paid for in New York, where the resulting injury would be expected to and did occur. Venue is proper pursuant to 28 U.S.C. §§ 1391(b) and 1400(a).

### The Wrongful Conduct

5.     The Sun Life Companies have a corporate culture that fosters infringement.  In multiple offices, employees initiated subscriptions to *Grant's Interest Rate Observer* by contacting Grant's office.  Each subscriber, acting on behalf and for the benefit of the Sun Life Companies, arranged for payment of a single subscription, and renewed it annually by making payment to Grant's in response to renewal invoices sent by Grant's.  Grant's mailed each paper issue to each of these subscribers pursuant to this subscription arrangement.  The first such subscription began at least as early as 1986, and subsequent subscriptions in other offices were added in later years.

6.     Beginning in 2003, Grant's has provided its newsletter electronically to authorized subscribers, by download from its web site server.  Subscribers from the Sun Life Companies have accessed the web site and downloaded the newsletter regularly.

7.     Each issue of *Grant's Interest Rate Observer* contains original subject matter and is copyrightable under the laws of the United States.  Grant's is the sole owner of copyright in each issue of *Grant's Interest Rate Observer*.  Its practice is and was to promptly register its copyright in each issue.  Representative certificates of registration are attached as Ex. A hereto.

8.     The Sun Life Companies routinely, systematically, and willfully made unauthorized copies of issues of *Grant's Interest Rate Observer*, on a regular basis since at least 2003. The Sun Life Companies distributed unauthorized copies to non-subscriber employees and

- 4 -

possibly to others.  Defendants did this as part of their business operations and for the purpose of increasing their business and profits.

9.      Grant's did not know of, and had no reason to know of, the Sun Life Companies' unauthorized copying and distribution of copies until 2004.

10.      The Sun Life Companies copied *Grant's Interest Rate Observer* in spite of copyright notices and warnings in every issue of *Grant's Interest Rate Observer*, and in other materials.  Each newsletter contained text similar or identical to the following:

> **Copyright warning and notice:**  It is a violation of federal copyright law to reproduce all or part of this publication to anyone (including but not limited to others in the same company or group) by any means, including but not limited to photocopying, printing, faxing, scanning, e-mailing, and Web site posting.  The Copyright Act imposes liability of up to $150,000 per issue for infringement. Information concerning possible copyright infringement will be gratefully received.  See *www.grantspub.com/terms.php* for additional information.

> Subscribers may circulate the one original issue received in the mail from Grant's, for example, using a circulation/routing slip.  Multiple copy discounts and limited (one-time) reprint arrangements also may be available upon inquiry.  Copyright 2004 [or applicable year], Grant's Financial Publishing Inc.  All rights reserved.

11.      Various copyright notices and warnings also appeared throughout Grant's web site, which was used regularly by the Sun Life Companies' personnel, and in regular emails to the Sun Life Companies' subscribers.  For example, the subscriber login page on Grant's web site emphasized that it "is a violation of federal copyright law to reproduce all or part of this publication and/or this Web site, and its contents by photocopying, faxing, scanning or any other means."  Emails regarding the online issues of *Grant's Interest Rate Observer* regularly stated

that "access is restricted to registered users only." Moreover, the fact that Grant's instituted a password-protected access system online, <u>locked</u> the electronic issues in Portable Document Format (PDF) using special software, and widely advertised these new protections to its subscribers in 2003 and 2004 served further, obvious notice that the issues were not to be copied.

12.    In addition, *Grant's Interest Rate Observer* periodically contained feature stories on Grant's efforts to enforce its copyrights, including by lawsuit if necessary. For example, the March 17, 2000 issue carried a story bearing a banner, bold-faced headline "**STAMP OUT LITIGATION**," which urged subscribers to obey the copyright laws and gave them every opportunity to do so, detailing legal ways in which subscribers could utilize Grant's and offering a group discount for honest subscribers who wanted to obtain copies legally. Similar stories ran in 2003 and 2004, and some also warned, in large typeface, that "[w]e use all available means, including new technology, to monitor unlawful copying."

13.    The Sun Life Companies likely received further warning of the impropriety and potential effects of infringement in October 2003 or shortly thereafter, when it was widely reported and discussed throughout the financial services industry that Legg Mason, Inc. and its subsidiary were assessed a nearly $20 million verdict for internal copyright infringement of a financial newsletter. Moreover, as a matter of simple fairness and common sense, the Sun Life Companies knew that what they were doing was wrong.

14.    Grant's notified SL-US on August 11, 2004 that it had reliable evidence of willful and repeated infringement. Grant's specifically requested that the Sun Life Companies

cease and desist all copying and distribution of *Grant's Interest Rate Observer*, conduct a full investigation of the matter, and retain all related documents and records.  A representative of the Sun Life Companies replied by letter of August 23, 2004, stating that the Sun Life Companies respect Grant's intellectual property rights and were addressing Grant's "very serious[]" allegations.  Nevertheless, employees of the Sun Life Companies continued to make systematic and illegal copies of *Grant's Interest Rate Observer* for many months following Grant's notice letter.

15.     Although the Sun Life Companies claim to respect copyrights and have stated that they possess and protect their own copyrights, the Sun Life Companies in fact foster a culture that tolerates and encourages infringement that they believe is likely to go undetected.

### Alternative Allegation Regarding Infringement Law

16.     Some of the infringing copies were made in Canada.  Grant's alleges in the alternative that (a) these infringements arose from and related to United States activities and works obtained from the United States, are infringements under United States copyright law, and foreseeably caused injury in and directed to the United States; or (b) these copies constituted unlawful infringements under Canadian law, of works copyrightable under Canadian law, for which similar relief is available in this Court.

### Alternative Allegation Regarding Joint Liability

17.     On information and belief, the culture of infringement at the Sun Life Companies has led to multiple infringements of Grant's copyrights, specifically including

infringements by SL-US and McLean Budden.  The entirety of the relationships between and among the Sun Life Companies is not necessarily fully apparent.  Pending discovery, and on information and belief, Grant's alleges in the alternative, pursuant to Fed. R. Civ. P. 8, that either (i) the corporate, financial, personnel, and other relationships between them render the Sun Life Companies jointly and severally liable for the infringements, or (ii) the Sun Life Companies each are liable for their own infringements.

### First Cause of Action:  Copyright Infringement

18.    The Sun Life Companies' systematic, unauthorized copying and distribution of copies of *Grant's Interest Rate Observer*, and violation of other exclusive rights set forth in the Copyright Act, 17 U.S.C. §§ 101 *et seq.*, constitutes willful copyright infringement.  Grant's has been damaged and faces the threat of irreparable injury from future infringement for which it has no adequate remedy at law.  The Sun Life Companies have unjustly profited by the infringement of Grant's copyrights.

19.    At any time before final judgment, Grant's is entitled to elect to receive statutory damages in lieu of actual damages and profits.  17 U.S.C. § 504(c).  For willful copyright infringement, the jury may award up to $150,000 for each infringed issue of *Grant's Interest Rate Observer*.  On information and belief, the Sun Life Companies infringed at least approximately forty (40) timely registered issues and possibly have infringed substantially more than that.  Defendants' infringement of each issue was willful.  Thus, statutory damages for the forty issues may total $6,000,000.00 and additional statutory damages may be awarded for each additional infringed issue.

- 8 -

20.     Grant's alternatively may recover the Sun Life Companies' profits attributable to infringement plus Grant's actual damages.  17 U.S.C. § 504(a).  The statute provides that "[i]n establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenues, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work."  17 U.S.C. § 504(b).  Sun Life's gross revenues over the period of the infringements is not known at this time, but will be determined during discovery.

### Prayer For Relief

WHEREFORE, Grant's respectfully prays and demands that:

A.     The Sun Life Companies be required to pay to Grant's actual damages for infringement, including but not limited to infringement of the previously-registered issues identified in Ex. A hereto, and be required to account to Grant's for profits attributable to the infringement;

B.     At Grant's election prior to the entry of final judgment in this case, and as an alternative to actual damages and profits, the Sun Life Companies be required to pay statutory damages for each timely-registered issue of *Grant's Interest Rate Observer* that was infringed, and specifically, that the Sun Life Companies pay enhanced statutory damages of $150,000 per work for each timely-registered issue of *Grant's Interest Rate Observer* that was willfully infringed;

C.     The Sun Life Companies and their officers, agents, servants, employees, and attorneys, and those in active concert or participation therewith be enjoined preliminarily and

- 9 -

permanently from in any manner, directly or indirectly, copying or distributing any tangible or

electronic copy of any issue of *Grant's Interest Rate Observer*, or any portion thereof, and from

inducing, aiding, causing or materially contributing to any such conduct by anyone else;

D.    The Sun Life Companies and each of their officers, agents, servants and

employees be ordered to surrender for inventory and destruction all copies of *Grant's Interest

Rate Observer*;

E.    Grant's be awarded pre-judgment and post-judgment interest;

F.    Punitive damages be awarded to the extent permitted by law;

G.    The Sun Life Companies be ordered to pay Grant's costs of this action, and

Grant's reasonable attorneys' fees incurred in connection with this action; and

H.    The Court award such other and further relief as is just.

### Jury Demand

Plaintiff Grant's demands a trial by jury.

Respectfully submitted,

By:  *William B. Baker*

William B. Baker (WB 3459)
Thomas W. Kirby
Bruce G. Joseph
Scott E. Bain
WILEY REIN & FIELDING LLP
1776 K Street, N.W.
Washington, D.C. 20006
(202) 719-7000

Dated: May 17, 2005                     Attorneys for the Plaintiff

- 10 -